UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Chapter 7 Case No. 08–27212–JKO

IN RE:

MOHSIN A. NAEEM AND
 MANSOORA NAEEM

Debtors.

_____/

## DEBTORS' MOTION TO REOPEN CASE PURSUANT TO LOCAL RULE 5010-1

TO HOLD CREDITOR(S) SELENE FINANCE, LP and CHRISTIANA TRUST, A
DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB AS TRUSTEE FOR
NORMANDY MORTGAGE LOAN TRUST SERIES 2013-18

**IN CONTEMPT FOR VIOLATION OF DISCHARGE INJUNCTION PURSUANT
TO 11 U.S.C. SECTION 524**
_____

    **COMES NOW** MOHSIN A. NAEEM and  MANSOORA NAEEM ("**Debtors**") by and

through their undersigned counsel, MICHAEL E. ZAPIN, and hereby  move this Court

pursuant to Local Rule 5010-1 to re-open their chapter 7 case in order to hold Creditors

SELENE FINANCE, LP **("Creditor Selene")** and CHRISTIANA TRUST, A DIVISION

OF   WILMINGTON   SAVINGS   FUND   SOCIETY,   FSB   AS   TRUSTEE   FOR

NORMANDY MORTGAGE LOAN TRUST SERIES 2013-18 **(Creditor  Christiana")**

[jointly referred to as "**Creditors**"] in contempt of this Court pursuant to 11 U.S.C. §§

105  and   524,   for  knowing  and  willful  violations  of  the  discharge  injunction  (the

"Motion"), and in support thereof, respectfully alleges as follows:

# I.    JURISDICTION

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.    Venue is proper under 28 U.S.C. §§1408 and 1409.

3.    The statutory predicates in support of the relief requested herein are 11 U.S.C. § 105(a), and § 524 along with Local Rule 5010-1.


# II.    PROCEDURAL BACKGROUND

4.    The Court is respectfully referred to debtor Mohsin Naeem's accompanying sworn affidavit in support, for the substantive background facts leading up to the filing of this instant motion.

5.    Debtors filed a voluntary chapter 7 case back on 11-12-2008 [ DE1].

6.    The 341 Meeting of Creditors was held and concluded on 12-11-2008 [DE 14].

7.    Debtors received their Chapter 7 Discharge on 03-12-2009 [DE 26].


# III.    THE LOAN OBLIGATION HISTORY

8.    The asserted violations against the Creditors concern a *single* debt obligation that was discharged in the debtors' underlying chapter 7 case, secured by a mortgage on debtors' homestead property commonly known by street address, 11953 NW 55th Street, Coral Springs, FL 33076 ["**the premises**"].

9.      Upon information and belief, Creditor Christiana Trust has held the mortgage and loan ever since 01-21-2014, and has utilized Creditor Selene as its servicing agent for the loan.

10.     The original mortgage and loan was made to debtors by Ameriquest Mortgage Company ("Ameriquest").  The mortgage was duly recorded on 02-27-2004. Copy of Ameriquest Mortgage annexed hereto as **Exhibit "A"** (referred to herein as "**the Mortgage**").

11.     Citi Residential Lending, Inc. ("Citi Residential") at some point received a power of attorney from Ameriquest, because duly recorded on 01-22-2009, is an Assignment of the Mortgage from Citi Residential "as Attorney In Fact for Ameriquest" assigning the Mortgage to "MERS As Nominee for JPMorgan Chase Bank."   Copy of 01-22-2009 Assignment annexed hereto as **Exhibit "B".**

12.     Citi Residential Lending, Inc. was the creditor associated with the claim as listed on debtors' voluntary petition, Schedule "D" thereof [DE 1, Pg. 19]. On 01-02-2009, Creditor Citi Residential files a notice with the court advising that debtor's primary loan at issue (No. 0069992469) was "sold to Chase Home Finance, LLC") [DE 16].

13.     On 02-02-2009, debtors' undersigned counsel receives communication from attorneys, Florida Default Group, PL, advising it was "retained by Chase Home Finance, LLC, to pursue a motion for relief from stay" which included a "consent motion" proffered to undersigned counsel, which recited that an "in

rem" foreclosure action would be commenced by "JPMC Specialty Mortgage, LLC."  Copy of notice annexed hereto as **Exhibit "C."**

14.    On 03-04-09, Creditor Citi Residential files a *corrective* notice with the Court, saying that just the "servicing rights" were actually transferred to Chase Home Finance, LLC, effective 01-01-2009, and that "further communication" be addressed to "JPMorgan Chase Bank, NA" in care of the said servicer [DE 21].

15.    On 01-16-2014, "MERS As Nominee for JPMorgan Chase Bank"  assigns the mortgage back to Ameriquest "care of JPMorgan Chase Bank." Copy of  01-16-2014 Assignment annexed hereto as **Exhibit "D."**

16.    On 01-21-2014, "JPMC Specialty Mortgage, LLC" assigns the mortgage to Creditor Christiana Trust.  Copy of Assignment annexed hereto as **Exhibit "E."**


## IV.    CAVALIER DISREGARD FOR BANKRUPTCY PROCESS

17.    As more fully set forth in the accompanying sworn affidavit of debtor Mohsin Naeem, for the last year or so, debtors have continuously received from Creditor Selene, dunning phone calls and statements containing a "Delinquency Notice," threatening additional fees and foreclosure upon "failure to bring [the] loan current."   (See debtor's supporting affidavit and the Exhibits referenced therein).

18.    Debtors advised Selene's customer service representatives on *numerous* occasions that the underlying loan obligation was discharged in bankruptcy,

and gave details of the case number. At least one Selene representative showed a cavalier disregard for the bankruptcy process, by advising debtor that the bankruptcy "did not apply" to Selene's loan and continued to demand payment from the debtors.

19. In conjunction with Creditor Selene's unlawful oral and written demands intended to collect on a discharged debt, Creditor Selene *also* reported the discharged debt out to the major credit reporting bureaus, without any indication that the debt was discharged in bankruptcy.

20.  The reporting was obviously intended to *pressure* the debtors into paying the discharged debt, as the debt was categorized as "Account Delinquent 180 days past due date" and "foreclosure proceedings started" and "balance owing: $302,733.00."

21. <u>Creditor Christiana Trust is just as culpable under the law</u>, under the theory of *principal & agent* recognized by the Supreme Court of the United States. (See debtors' legal propositions below.)

22. The aggravation, the frustration, the emotional turmoil and marital strife that Creditors' actions have caused these debtors – *even if nothing more* – smacks of judicial contempt, worthy of a swift judicial response.

23. In turning a blind eye to the bankruptcy process, these Creditors did not just undermine the bankruptcy process as a whole, by inflicting an unwarranted emotional distress upon debtors, but they caused financial injury as well.

24. As detailed in debtor Mohsin Naeem's sworn affidavit, <u>debtors' ability to obtain a fresh financial start has been entirely hampered</u>. Their plans to purchase a new home for the one surrendered during the bankruptcy case have been thwarted, because of the unlawful derogatory credit remarks reported out by Creditors to the major credit bureaus. Debtors were denied a mortgage loan commitment specifically because of those derogatory remarks, and lost an opportunity to purchase a new home because of it. (See debtor's supporting affidavit and Exhibit(s) referenced therein). Debtors are now relegated to *renting* a home at an *increased* cost to their monthly budget.

25. For the reasons set forth below in debtors' legal propositions, both the servicing agent, Creditor Selene, and its principal, Creditor Christiana are both responsible and answerable to this Court for Creditor's Selene's unlawful conduct.


## I.   LEGAL PROPOSITIONS

### A.  Discharge Injunction

1. 11 U.S.C.S. § 105(a) grants statutory contempt powers in the bankruptcy context, stating, that the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Thus, bankruptcy courts have independent statutory powers to award monetary and other forms of relief for violations of the discharge injunction to the extent such awards are necessary and appropriate to carry out the provisions of the

Bankruptcy Code, *In re Bryer*, 386 B.R. 895, 2008 Bankr. LEXIS 1271 (Bankr. S.D. Fla. 2008).

2.     Bankruptcy judges, like district judges, have the power to coerce compliance with injunctive orders. In the bankruptcy context, the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge. In addition to the traditional sanctions for coercing compliance with an injunction-incarceration or financial penalty, a bankruptcy court may issue orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code. A bankruptcy court thus has the additional power to enjoin litigants from prosecuting in state court claims against former debtors, *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 2012 U.S. App. LEXIS 10891, Bankr. L. Rep. (CCH) P82,270, 67 Collier Bankr. Cas. 2d (MB) 1485, 56 Bankr. Ct. Dec. 156, 23 Fla. L. Weekly Fed. C 1088, 2012 WL 1940336 (11th Cir. Fla. 2012).

**B.   Independent Violations of The Discharge Injunction**

3.     In the case of *In re Wassem*, 456 B.R. 566, 2009 Bankr. LEXIS 5495 (Bankr. M.D. Fla. 2009), the court noted that the creditor, Aurora Loan Services, LLC, had notice of the debtor's bankruptcy case from the outset and noted in its computer system that the debtor was in bankruptcy.  It received notice of the debtor's discharge through communications from the court, the debtor, and

debtor's counsel. The creditor's post-discharge communications to the debtor constituted acts to collect or recover a discharged debt as a personal liability of the debtor. Each of the creditor's 44 telephone calls constituted a separate violation of the injunction. The violations were willful and intentional, as the creditor knew that the discharge was entered and intended its actions that violated the injunction.  The court imposed sanctions for each violation.   See also *In re Smith, 2012* Bankr. LEXIS 1323 (Bankr. M.D. Fla. Mar. 21, 2012) with similar holding.

### C.  <u>**Willful Violations**</u>

4.     A creditor may be held liable for contempt pursuant to 11 U.S.C.S. § 105(a) for willfully violating the permanent injunction of 11 U.S.C.S. § 524. Conduct is willful if the creditor: (1) knew that the discharge injunction was invoked; and (2) intended the actions which violated the discharge injunction. The subjective beliefs or intent of the creditor are irrelevant. Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test, *In re Wassem*, 456 B.R. 566, 2009 Bankr. LEXIS 5495 (Bankr. M.D. Fla. 2009).

5.     There is no question in our case at bar, that Creditor Selene had actual notice of the debtor's bankruptcy case and discharge, by means of multiple conversations held between its service representatives and the debtors. It is also highly likely that the knowledge of debtors' bankruptcy filing was passed

down from Citi Residential through the chain of title of the loan. Citi Residential was certainly well aware of debtors' bankruptcy filing, as it filed notices in debtors' bankruptcy case, and the first assignment away from Citi Financial did not take place until about two months *after* debtors' bankruptcy filing (i.e., case filed on 11-2-08; Citi Residential advises the assignment is effective as of 1-1-09  [DE 21].

## D.  Damages

### a.  Actual or Compensatory Damages

6. Actual damages are "compensatory damages." They are "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to `nominal' damages and `punitive' damages," *In re Jung Bea Han*, 333 B.R. 881 (Bankr. N.D. Fla., 2005) relying upon *McMillian v. F.D.I.C*, 81 F.3d 1041, 1054 (11th Cir.1996) (quoting *Black's Law Dictionary* (6th Ed.1991)); *Cox v. Billy Pounds Motors, Inc*. (In re Cox), 214 B.R. 635, 642 (Bankr.N.D.Ala. 1997).

7. The debtor is entitled to an award of actual damages pursuant to 11 U.S.C.S. § 105(a) for each such communication. Emotional distress constitutes actual damages. The debtor's emotional distress was readily apparent due to the creditor's intentional conduct and cavalier disregard for the law.  Nor is the debtor required to present corroborating medical evidence. Attorney's fees and costs also constitute actual damages. An award of punitive damages is also

warranted, *In re Wassem*, 456 B.R. 566, 2009 Bankr. LEXIS 5495 (Bankr. M.D. Fla. 2009).

8.      In the case of *In re Wassem*, the court awarded $100.00 for each telephone call, $5,000.00 for attorney's fees and costs, plus $20,000.00 in punitive damages pursuant to 11 U.S.C. Section 105(a).


b.  **Credit Reporting Injury**

9.      In the case of *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, the court found:

> there are certain situations in which reporting a debt can be considered an act sufficient to violate the discharge injunction, "if the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt, a violation of the discharge injunction could be established (in reliance upon *Irby v. Fashion Bug, (In re Irby)*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005)…

> The *Lohmeyer* court continuing:


> … even if it is true that Movant's report to the credit bureau contains truthful information that is a matter of public record,  such a report, if made with the intent to harass or coerce a debtor and/or co-debtor into paying a pre-petition debt, could violate the automatic stays [sic]. . . (in reliance upon *In re Singley*, 233 B.R. 170, 174 (Bankr. S.D. Ga. 1999)).


> The *Lohmeyer* court continuing:

> **a notation of debt on a credit report "[is] just the type of creditor shenanigans intended to be prohibited by the automatic stay."** [emph. added] (in reliance upon on *In re Sommersdorf,* 139 B.R. 700, 701 (Bankr. S.D. Ohio 1992)(citing *In re Spaulding*, 116 Bankr. 567, 570 (Bankr. S.D. Ohio 1990)

(both *Sommersdorf* and *Spaulding* were handled in the context of a violation of the automatic stay – the rationale arguably interchangeable with a discharge violation).

See also, *Bowen v. Mountain Commerce Bank (In re Bowen),* 2010 Bankr. LEXIS 1940:

> it has been appropriately recognized that where the failure to update the status of a debt is for the purpose of coercing payment by a debtor, essentially lying in passive wait to collect the debt, then a violation of the discharge injunction has occurred, even without other overt collection actions such as letters or harassing telephone calls. See *In re Lohmeyer*, 365 B.R. at 750

### c. **Punitive Damages – generally**

10. In the case of *In re WVF Acquisition, LLC*, Case No.: 09-30483-EPK (Bankr. S.D.Fla. 12/2/2009) (Bankr. S.D.Fla., 2009), the court stated, in pertinent part:

> Section 105 constitutes express authority to award punitive damages for contempt to the extent necessary or appropriate to carry out the provisions of the Bankruptcy Code. Section 105 "creates a statutory contempt power distinct from the court's inherent contempt.

[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved . . . for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief.' To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *In re Wagner*, 7,4 B.R. 898 (Bankr. E.D. Pa. 1987) (quoting *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir.1978)).

Decisions awarding punitive damages in this context typically consider the following factors: (1) the nature of the violator's conduct; (2) the nature and extent of the harm to the debtor; (3) the violator's ability to pay; (4) the motives of the violator; and (5) any provocation by the debtor. Id. at 905-06; see also *In re White*, 41,0 B.R. 322 (Bankr. M.D. Fla. 2009) (citing cases); *In re Keen*, 30,1 B.R. 749 (Bankr. S.D. Fla. 2003) (citing various cases).

11. Debtors submit that punitive damages are warranted in this case since the violations were committed with actual knowledge of debtor's bankruptcy case and/or with reckless disregard of same. Upon information and belief, Creditor has the ability to pay punitive damages. The motive of Creditor Selene was to collect on a discharged debt – and Creditor Selene exhibited ill-will towards debtor and a reckless indifference to the bankruptcy process as a whole.

12. Based on all of the forgoing, Debtors submit that they are entitled to recovery of actual damages, costs, attorney's fees, and punitive damages, in such sum as the Court should find just under the circumstances.

### E. *Principal & Agent* **theory of liability to hold Creditor Christiana Trust liable**

13. As the Supreme Court of the United States made clear in its decision *Am. Soc'y of Mech. Eng'Rs v. Hydrolevel Corp.*, 456 U.S. 556:

   Under ***general rules of agency law***, [emph. added] principals are liable when their agents act with apparent authority and commit torts analogous to the antitrust violation presented here…

   … Under an apparent authority theory, liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.

14. Although the *Hydrolevel* court was dealing with an anti-trust matter, the theory of liability recited was a *general* one – based on the apparent authority of an agent to act – even where an intentional tort was committed – for these reasons Creditor Christiana Trust is answerable for the misconduct of its agent, Creditor Selene.

**Undersigned counsel hereby certifies** that he is admitted to the Bar of the United States District Court for the Southern District of Florida, and is in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

*WHEREFORE*, the debtors, MOHSIN A. NAEEM and MANSOORA NAEEM respectfully request entry of an Order pursuant to Local Rule 5010-1, 11 U.S.C § 105(a) and § 524:

  a.  Reopening debtors' instant chapter 7 bankruptcy case for purposes of determining the within motion for contempt against creditor Selene and creditor Christiana Trust;

  b.  Awarding sanctions in the form of compensatory damages for costs, fees and actual damages in a sum to be determined by this Court;

  c.  Awarding reasonable counsel fees in a sum to be determined by this Court;

  d.  Awarding punitive damages in a sum to be determined by this Court;

  e.  Directing creditor Selene and/or creditor Christiana Trust to "scrub" debtors' credit reports in conformity with the discharge order; and

  f.  Such other and further relief that the Court deems just and proper.

DATED THIS 23rd    day of June, 2015

*/s/ Michael E. Zapin*
_____
MICHAEL E. ZAPIN
LAW OFFICES OF MICHAEL E. ZAPIN
ATTORNEY FOR THE DEBTORS

FL STATE BAR NUMBER:  0037264
20283 State Road 7
Suite 400
Boca Raton, FL 33498
Tel.    561.367.1444
Fax.    561.948-2085
michaelezapin@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Chapter 7 Case No. 08−27212−JKO

IN RE:

MOHSIN A. NAEEM AND
 MANSOORA NAEEM

Debtors.

_____/

STATE OF FLORIDA          )
                          ) SS.:
COUNTY OF BROWARD    )

**MOHSIN A. NAEEM,** after having been duly sworn, deposes and says the following under penalty of perjury:

1. I am the debtor in the above captioned bankruptcy case and have personal knowledge of all of the facts and circumstances set forth in this affidavit.  I make this affidavit in support of debtors' motion to hold Creditors Selene Finance, LP ("Creditor Selene") and Christiana Trust, A Division Of Wilmington Savings Fund Society, FSB As Trustee For Normandy Mortgage Loan Trust Series 2013-18 (Creditor Christiana")  [jointly referred to as "Creditors"] in contempt of this Court pursuant to 11 U.S.C. §§ 105 and  524,  for knowing and willful violations of the discharge injunction (the "Motion"), and in support thereof, respectfully alleges as follows:

## I.  BACKGROUND

2.  My wife and I filed a joint voluntary petition for bankruptcy relief on November 12, 2008  [DE1] and received our Chapter 7 Discharge on March 12, 2009 [DE 26].  I respectfully refer the Court to the detailed procedural history set forth in our attorney's accompanying motion papers, and incorporate that history as though more fully set forth at length in this affidavit.

## II.  CREDITOR SELENE'S CONTINUED, WILFUL VIOLATION OF DISCHARGE ORDER

3.  Creditor Selene continues to harass my wife and I by dunning us with bills following the discharge of our bankruptcy case, notwithstanding that the underlying debt was <u>discharged</u> by the Discharge Order entered by the Court [DE 26].   Neither my wife Mansoora (co-debtor) nor I reaffirmed the underlying mortgage debt.

4.  I have personally spoken with representatives *numerous* times over the last six months, explaining to at least several of them, that the debt was discharged in my bankruptcy case.  I gave them our filing information, including the date of filing and the case number.  I also explained that the

creditor that was listed in the case was Citi Residential – a *predecessor in interest* to the loan, or at least a predecessor loan servicer.

5. Early on, I was advised by at least one representative of Creditor Selene that the "matter would be researched" and their "records updated" if what I advised them was true.   To my knowledge those records were never "updated," as creditor Selene continues to dun me with threatening statements.   I had one conversation at some point in March, 2015, with a particularly irate Selene representative, who basically <u>told me that the bankruptcy did not discharge this debt</u> – that "this was a different debt" and they would continue to their efforts to collect and hold me liable, even after eventual foreclosure.   Creditor Selene is apparently trying to make good on its threat.   Collectively annexed hereto as **Exhibit "F"** are sample monthly statements from Creditor Selene for the period of September 2014 up through and including April 2015.   Each of these statements contain a <u>threatening "Delinquency Notice" setting forth the following:</u>

> **You are late on your mortgage payments**. Failure to bring your loan current **<u>may result in fees</u>** [emph. added] and foreclosure…. Your loan has been past due since 2010-5-02. As of ~~~ you are ~~ days delinquent on your mortgage loan.

6. As if adding insult to injury, on at least some correspondence – see **Exhibit "G"** annexed hereto, Creditor Selene advises that "if you received a discharge of this debt, this communication is not an attempt to collect a debt … also if you are involved in a bankruptcy note that Selene Finance LP intends to fully comply with the Code, including without limitation, the automatic stay."

7. Now this may make for some great "lip service" to the bankruptcy code, but in fact, the *barrage* of statements that we received from Creditor Selene (*and continue to receive*) makes clear that they *are* in fact seeking to collect on our discharged debt, notwithstanding their knowledge of our bankruptcy. Creditor Selene's debt collectors have made that clear to us in phone conversations.   And Creditor Selene's reporting out of derogatory credit information to the major credit bureaus is like the proverbial "nail in the coffin" that blocked our ability to obtain necessary financing in order to purchase a new home for the one we surrendered in our bankruptcy.  It's as if Creditor Selene is forcing us to our *knees* on all fronts, to pressure us into paying this debt.

8.  Annexed hereto as **Exhibit "H"** is my excerpted, redacted credit report which shows the following derogatory credit information reported by Creditor Selene (see internal "page 3" of Ex. "H"):

**"Account Delinquent 180 days past due date" and "foreclosure proceedings started" and "balance owing: $302,733.00."**

9. Annexed hereto as **Exhibit "I"** is the denial letter we received from our potential lender, which explained that the reason for the denial was the derogatory information posted by Creditor Selene.

10. Since we were unable to obtain financing to purchase a home, and with the threat of Creditor's foreclosure sale looming over head, I literally had to beg my brother for financial and housing assistance to relocate my family on a temporary basis.  <u>I cannot begin to express the marital strife this has caused between my wife and I</u>.  The financial pressure we felt *leading up* to the bankruptcy, feels like it has *reared its ugly head* once again.

11. Creditor Selene's "half-baked" response that "this is a different loan" and that "[they] are not subject to the bankruptcy," belies the detailed well-documented history set forth in my attorney's accompanying papers, that tracks the chronology of my prior loan as it moved from creditor to creditor. There is no question that this debt is *one and the same* as the debt that was discharged in our chapter 7 bankruptcy case.  Creditor Selene refuses to

acknowledge that, opting instead to pressure my wife and I into paying on a debt that no longer exists.

12. When this Court reviews the documented loan history connected with the discharged debt, it will see some very *big* names: *Citi Residential*, *JPMorgan Chase Bank*, etc.  All of these companies are in the business of *money*.  Billions of dollars.  It is beyond belief that their internal record keeping could be so *sloppy* in this regard;  that something so important as a homeowner that had filed for bankruptcy and had received a discharge in bankruptcy, would not have been passed down as the loan was sold from party to party.  Yet, *predecessor-sloppiness* should not excuse Creditor Selene and Creditor Christiana Trust, in the face of their actual knowledge, their failure or refusal to update their records in the face of that knowledge, and the continued harassment that plagues my wife and me to this date.

13. I pray this Court sanctions Creditor Selene and Creditor Christiana Trust, and orders them to cease from further dunning measures, and to "scrub" our credit reports in conformity with the Discharge Order we received in bankruptcy.


**WHEREFORE**, for all of the forgoing reasons, it is respectfully requested that this Court issue an Order re-opening our Chapter 7 case in order to hold Creditor

Selene and Creditor Christiana Trust  in Contempt of Court, imposing sanctions against said Creditors in the form of compensatory damages for costs, fees and actual damages in a sum to be determined by this Court, reasonable counsel fees in a sum to be determined by this Court, punitive damages in a sum to be determined by this Court, directing said Creditors to "Scrub" our credit reports in conformity with the bankruptcy discharge, along with such other and further relief which the Court deems just and proper.

_____

**MOHSIN A. NAEEM**

Sworn to before me this

_17 4th_ day of June, 2015

_____

Notary Public
My commission expires:
_7/18/15_

Notary Public State of Florida
Ira Schulman
My Commission EE113551
Expires 07/18/2015